# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

KATHRYN E. ENGLE,        )        CASE NO.  5:14-cv-1161
        )
        PLAINTIFF,       )        JUDGE SARA LIOI
        )
vs.        )
        )        MEMORANDUM OPINION
        )
        )
CITY OF CUYAHOGA FALLS, et al.,   )
        )
        DEFENDANTS.    )

Before the Court are two motions. By the first motion, defendants, Dr. Daniel Celik, Summa Akron City, and St. Thomas Hospitals, identified in the original complaint as St. Thomas Hospital Emergency Room (collectively "Summa defendants"), seek dismissal of all claims against them (Doc. No. 12 ["MTD"]). In the second motion, defendants, City of Cuyahoga Falls ("city"), Cuyahoga Falls City Development Department ("CFDD"), Cuyahoga Falls Police Department ("CFPD"), Charles Nettle ("Nettle"), Cuyahoga Falls Police Officers Robert Schmidt, James McGowan, Officer "McIlvain," Mark Ralston, Daniel Randall, David Holzapfel, Richard Garinger and Sergeant Michael Heinl ("city officers") (collectively "city defendants"), seek partial judgment on the pleadings (Doc. No. 14 ["PMJP"]). Plaintiff Kathryn Engle ("plaintiff") filed an opposition to city defendants' motion (Doc. No. 16 ["Opp'n"]). Summa defendants' motion stands unopposed.

For the reasons set forth below, Summa defendants' motion to dismiss is GRANTED. City defendants' motion for partial judgment on the pleadings is GRANTED in part and DENIED in part.

## I.  BACKGROUND

Plaintiff filed this *pro se* action on April 15, 2014 in the Summit County Court of Common Pleas. (Doc. No. 1-1 ["St. Ct. Compl."].) Styled a "CIVIL RIGHTS COMPLAINT," the state court pleading contained a running narrative of an incident in 2013 wherein city officers purportedly broke into plaintiff's home under the guise of facilitating the removal of property belonging to plaintiff's estranged son, Kory Engle ("Kory"), and Kory's girlfriend, Tanya Hess ("Tanya"). (St. Ct. Compl. at 7.[1])

On May 30, 2014, city defendants removed this action to federal court. (Doc. No. 1.) Following removal, city defendants moved for a more definite statement (Doc. No. 3), and plaintiff filed a motion for judgment on all claims (Doc. No. 5). After reviewing the original complaint, the Court issued an order advising plaintiff that her pleading did not appear to contain allegations which could be construed as setting forth a valid federal claim. (Doc. No. 8.) Plaintiff was afforded leave to file an amended complaint, which she did file on October 14, 2014.[2] (Doc. No. 10 ["Am. Compl."].)

According to the amended complaint, prior to April 15, 2013, plaintiff had affixed a sign to a vehicle parked in front of her residence "advising the public that Kory

---

[1] All page numbers are to the page identification number generated by the Court's electronic docketing system.

[2] Upon the grant of leave to file an amended complaint, the Court denied without prejudice the motions for a more definite statement and for judgment. (Doc. No. 9.)

Engle did not reside [at her residence] and arrangements would be made to pick up any personal property of Kory[,] or his girlfriend, Tanya Hess[,] and further advised the officers that Kory Engle had no right to be in or on the property." (*Id.* ¶ 7.) Notwithstanding the sign, on April 15, 2013, plaintiff alleges that Officers Schmidt and Holzapel told Kory that he could enter plaintiff's residence "without [plaintiff's] consent or approval." (*Id.*) It is unclear whether Kory, or any other individual, gained entry to plaintiff's residence that day.

What is evident from the allegations in the amended complaint is that plaintiff contends that certain city officers, including Officers Garinger and McGowan, returned to plaintiff's residence two days later (on April 17, 2014). (*Id.* ¶ 8.) Plaintiff alleges that these officers, "with force and violence and with reckless disregard for the rights of the Plaintiff, forcibly entered the Plaintiff's residence through a rear door causing damage to the door and other personal property of the Plaintiff and conducted a search of the residence." (*Id.*)

Plaintiff avers that certain city officers permitted Tanya to follow them into the premises. (*Id.* ¶ 9.) Once inside, the city officers and Tanya observed plaintiff "in a state of partial undress and nudity." (*Id.* ¶ 10.) Officers Garinger and other city officers "physically prevented" plaintiff from stopping Tanya from taking plaintiff's personal property. (*Id.* ¶¶ 11, 12.) During the encounter, Officer Garinger and others also purportedly threatened plaintiff with arrest, and "advised her that they intended to and did 'pink slip' her for mental evaluation at St. Thomas Hospital Mental Health Unit, where she was taken by a friend as an alternative to transport by the" city officers. (*Id.* ¶ 12.)

Plaintiff further alleges that her home was subsequently condemned by Nettle, who appears to be an employee of CFDD. (*Id.* ¶ 31.)

Applying a liberal construction to the amended complaint, the Court finds that plaintiff has attempted to raise federal claims for excessive force, unlawful search and seizure, and due process. She also appears to assert state law claims for intentional and negligent infliction of emotional distress, trespass, and civil conspiracy. Additionally, she seeks to hold the city liable for implementing and/or permitting a pattern or practice of unlawful conduct by its employees. (*Id.* ¶¶ 15-16.) Summa defendants request dismissal from the action, while city defendants seek judgment on the pleadings in their favor on all claims except the Fourth Amendment search and seizure claim.

## II.  STANDARD OF REVIEW

Summa defendants bring their dispositive motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, maintaining that the complaint fails to state a cause of action against them. To satisfy the pleading requirements of Rule 8, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct.

4

1937, 173 L. Ed. 2d 868 (2009) (This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555); *see Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000) (the court should not accept conclusions of law or unwarranted inferences couched in the form of factual allegations). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988) (quotation marks and citations omitted) (emphasis in original).

Although the pleading standard of Rule 8 does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556 n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

City defendants move under Rule 12(c) for partial judgment on the pleadings. Rule 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews a motion under Rule 12(c) in the same manner it would review a motion under Rule 12(b)(6). *See Vickers v. Fairfield Med. Ctr*., 453 F.3d 757, 761 (6th Cir. 2006).

In considering the pending dispositive motions, the Court is mindful that *pro se* complaints must be held "to less stringent standards than formal pleadings drafted

by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Nonetheless, "pro se plaintiffs are not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "As [the Sixth Circuit] has noted, the lenient treatment generally accorded to pro se litigants has limits." *Id.* (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). For example, where "a complaint consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a court could find a violation of the Civil Rights Acts, [it] fails to state a claim under Rule 12(b)(6)." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) (quotation marks and citation omitted); *see Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (the court is not required to "guess at the nature of the claims asserted"), *abrogated on other grounds*, *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc). Indeed, courts have been unwilling to "abrogate basic pleading essentials in *pro se* suits." *Wells*, 891 F.2d at 594.

In other words, there are limits to the court's "liberal construction" of a *pro se* complaint. As the Court observed in *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757 (E.D. Mich. 2009):

> [C]ourts may not rewrite a complaint to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), nor create a claim for Plaintiff, *Clark. Nat'l Travelers Life Ins. Co*., 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

*Rogers*, 595 F. Supp. 2d at 766.

### III.  SUMMA DEFENDANTS' MOTION TO DISMISS

In their unopposed motion, Summa defendants argue that the amended complaint is devoid of any allegations of wrongdoing leveled against them. Indeed, a review of the amended complaint reveals that there are only two references to these defendants in plaintiff's amended pleading: (1) plaintiff alleges that she was taken by a friend for evaluation at "St. Thomas Hospital Mental Health Unit"; and (2) these defendants are listed in the certificate of service as receiving service. (*See* Am. Compl. ¶ 12, Certificate of Service at 89.) Notably, plaintiff makes no reference to these defendants in the "PARTIES" section of the amended complaint. (*Id*. ¶¶ 3-5.)

Even if it could be argued that Summa defendants are included in the caption as part of the "*et al*." designation for defendants, simply listing these defendants in the caption does not create a cause of action against them. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (citation omitted); *see Webb v. Caruso*, No. 1:06-cv-3, 2006 WL 416261, at *4 (W.D. Mich. Feb. 22, 2006) ("Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded pro se complaints.") (citing *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990)).

It is true that the original complaint contained allegations that Summa defendants did not conduct an independent fact finding before admitting plaintiff for

7

observation and they did not provide plaintiff with the proper HIPAA form. It appears, however, that plaintiff has abandoned all claims against the Summa defendants inasmuch as these allegations are missing from plaintiff's latest pleading, and plaintiff did not oppose Summa defendants' motion requesting dismissal on this basis.[3] Because the amended complaint fails to include any allegations against Summa defendants, it fails, as to these defendants, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Accordingly, Summa defendants' motion to dismiss is GRANTED.

## IV. CITY DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### A.  CFPD and CFDD are not Sui Juris

City defendants argue that CFPD and CFDD are not proper parties. The Court agrees. It is well established that police departments "are not *sui juris* and therefore cannot sue or be sued. They are merely sub-units of the municipalities they serve." *Deir v. Lake Cnty.*, No. 1:12CV110, 2012 WL 1142467, at *3 (N.D. Ohio Apr. 4, 2012) (internal citations omitted); *see Lawson v. City of Youngstown*, 912 F. Supp. 2d 527, 531 (N.D. Ohio 2012) (collecting cases). Likewise, a city's development department is merely a sub-unit of the city and is not capable of being sued separately. *See, e.g., Meacham v. Woolford*, No. 5:06CV2447, 2007 WL 1087609, at *1 n.1 (N.D. Ohio Apr. 9, 2007) (Akron City Department of Planning and Urban Development was an improper

---

[3] "Generally, amended pleadings supersede original pleadings." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) (citing 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)); *see also Drake v. City of Detroit*, 266 F. App'x 444, 447-48 (6th Cir. 2008) (district court did not err in failing to address claim that appeared in original complaint but was not contained in the amended complaint). However, in *Heyward*, the Sixth Circuit found that the general rule is inapplicable where a trial court instructs a party to re-plead to omit certain claims that have been dismissed. *Howard*, 759 F.3d at 618. In contrast, here, the Court did not instruct plaintiff to re-plead to omit certain previously dismissed claims. While the Court advised plaintiff that the complaint allegations did not set forth a federal claim, and afforded plaintiff leave to correct the deficiency, the Court did not instruct plaintiff to exclude any claims or omit allegations against any particular defendants.

party because it was not *sui juris*). Defendants CFPD and CFDD are hereby DISMISSED from this litigation.

   B. **Claims against the City**

   The city maintains that it is immune from plaintiff's state law claims under Ohio Rev. Code § 2744. It further argues that plaintiff has failed to set forth a viable claim for municipal liability on the federal claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

   *1. Tort Liability Immunity*

   Section 2744 of the Ohio Revised Code extends to municipalities immunity from tort liability for governmental and propriety functions. Ohio Rev. Code § 2744.02(A)(1); *Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007). Plaintiff does not dispute that "government functions" include the operations of law enforcement. § 2744.01(C)(2)(a). There are, however, certain exceptions to the general grant of immunity spelled out in the statute. Specifically, immunity is not available to a municipality where: (1) injury or damage is caused by a municipal employee's negligent operation of a motor vehicle, § 2744.02(B)(1); (2) the losses are due to the negligent performance of employees with respect to proprietary functions of a political subdivision, § 2744.02(B)(2); (3) damages are the result of a municipality's negligent failure to keep public roads in repair, § 2744.02(B)(3); (4) damages are the result of a physical defect on the grounds of public buildings used for government functions, § 2744.02(B)(4); and (5) civil liability is expressly imposed by another provision of the Ohio Revised Code, § 2744.04(B)(5).

Accepting the allegations in plaintiff's amended complaint as true, there can be no doubt that the city qualifies for immunity under Ohio Rev. Code § 2744.02(A)(1), as its employees were engaged in the governmental function of police activities while on plaintiff's property. (*See* Am. Compl. ¶ 13 ["The acts and actions of the Officers were undertaken in their capacity as law enforcement officers of the City of Cuyahoga Falls and the Cuyahoga Falls Police Department . . . ."].) Further, there are no exceptions that would apply to the circumstances described in the amended complaint, and plaintiff has not suggested otherwise. Thus, the Court finds that the city is entitled to immunity for plaintiff's state tort claims. *See generally Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 744 (N.D. Ohio 2008) ("Ohio courts have held that political subdivisions are entitled to immunity under § 2744.02 for the intentional torts committed by their employees.") (collecting cases).

### 2. Monell Liability

Plaintiff's "First Claim for Relief" purports to raise federal clams under the umbrella of 42 U.S.C. § 1983. Municipalities may not be held liable under § 1983 upon a theory of *respondeat superior*. Rather, a government entity is responsible under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" alleged by the plaintiff. *Monell*, 436 U.S. at 694. In short, the "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) (quoting *Monell*, 436 U.S. at 694) (further citation omitted).

The Sixth Circuit has recognized four avenues by which a plaintiff can prove the existence of a municipal policy that was the "moving force" behind a constitutional violation: (1) municipality's legislative enactments or official policies, (2) actions taken by an official with final decision-making authority, (3) a policy of inadequate training or supervision, or (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). In a case alleging failure to train officers or to investigate, a plaintiff must also establish that the "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *Ferguson v. Leiter*, 220 F. Supp. 2d 875, 884 (N.D. Ohio 2002) (quoting *Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

Here, plaintiff alleges that "[t]he search and seizure was part of a pattern and practice by Defendants, of improperly entering dwellings without a warrant in disregard [of] the Fourth Amendment and other rights, privileges and immunities of the Plaintiff and other citizens . . . ." (Am. Compl. ¶ 15.) She further alleges that "[t]he policies, customs, patterns and practices of Defendants were the moving force behind the constitutional violations suffered by" plaintiff. (*Id* ¶ 18.) With respect to her allegation that the city failed to properly train, she explains simply:

> Although the policy make[rs] of the Defendants, City of Cuyahoga Falls and its respective departments were on notice of the obvious need to train and supervise police in these areas, Defendants failed to train and supervise the individual Officers who conducted these searches in proper search procedures, proper use of force procedures and proper procedures regarding investigat[ion].

(*Id*. ¶ 19.)

11

Without any factual allegations to support her *Monell* claim, plaintiff's allegations that the city failed to train and that this failure was the "moving force" behind the alleged constitutional violations ring hollow. *Johnson v. Gannon*, No. 3:09-0551, 2010 WL 1658616, at *4 (M.D. Tenn. Apr. 23, 2010) ("In determining whether allegations of failure to train state a plausible claim for relief, the assertion of a legal conclusion about the involvement of supervisory personnel is insufficient because this is precisely the type of the-defendant-unlawfully-harmed-me allegation that the Supreme Court [in *Iqbal*] has determined should not be given credence[.]") (quotation marks and citation omitted); *see, e.g., Pariscoff v. Columbus Police Dep't*, No. 2:14-cv-00855, 2015 WL 1476651, at *3 (S.D. Ohio Mar. 31, 2015) (dismissing *Monell* claim against municipality where plaintiff pled no specific allegations concerning the police department's training regime or policies). Moreover, while plaintiff references the violated rights of "other citizens," she fails to allege any facts describing incidents involving any other citizen of the city, leaving her police encounter the only instance of alleged illegal activity. To support a *Monell* claim based on a "failure to train" theory of liability, a plaintiff must plead facts demonstrating a pattern of illegal activity. A single incident alleging illegal activity is generally insufficient to survive a Rule 12(b)(6) motion to dismiss.[4] *See Mitchell v. City of Hamilton*, No. 1:11-cv-764, 2012 WL 701173,

---

[4] It is true that municipal liability may be imposed for "a single decision by [a] properly constituted legislative body—whether or not that body has taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (citations omitted). Plaintiff has not, however, alleged facts that would support a conclusion that the actions taken by the city officers were the result of a municipal decision. *Cf. Owen v. City of Independence*, 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980) (municipal liability for city's resolution firing plaintiff without a pre-termination hearing).

at *5 (S.D. Ohio Mar. 1, 2012) (dismissing a *Monell* claim because the plaintiff had "pleaded facts concerning only a single set of wrongful acts toward him, not a policy or custom of inadequate training or supervision"). Because plaintiff has failed to set forth any allegations tying her alleged injuries to a municipal policy or custom, the Court DISMISSES the federal claims against the city.

### C.    Claims against the City Officers and Nettle

The city officers maintain that they, like the city, are entitled to immunity with respect to plaintiff's state tort claims. They also suggest that plaintiff has failed to allege sufficient facts to withstand Rule 12(b)(6) dismissal of plaintiff's claims of excessive force and negligent infliction of emotional distress. Additionally, the city officers and Nettle[5] contend that the intracorporate conspiracy doctrine frustrates plaintiff's civil conspiracy claims.

### *1.    Tort Liability Immunity*

Ohio Rev. Code § 2744.03 provides immunity from tort actions for employees of political subdivisions acting in a governmental or proprietary function, and lays out specific exceptions. *Chesher*, 477 F.3d at 796. Specifically, immunity is not available to an employee who has acted "manifestly outside the scope of [his] employment[,]" acted "with malicious purpose, in bad faith, or in a wanton or reckless manner[,]" or where "liability is expressly imposed upon the employee by a section of the Revised Code." Ohio Rev. Code § 2744.03(A)(6)(a)-(c).

---

[5] It appears from the amended complaint that Nettle is only implicated in plaintiff's federal conspiracy claim.

13

As previously noted, all of the acts that form the basis for plaintiff's state claims were performed in connection with a "government function." *See* Ohio Rev. Code § 2744.01(C)(2)(a). Plaintiff has not alleged that the city officers were acting outside of the scope of their duties when they gained entry to her home, and, in fact, she alleges that the officers were acting "in their capacity as law enforcement officers[.]" (Am. Compl. ¶ 13.) Additionally, plaintiff has failed to identify any section of the Ohio Revised Code that expressly imposes liability for the actions alleged in the amended complaint, and the Court is not aware of any such provision. Therefore, the city officers will be entitled to immunity on plaintiff's state tort claims unless they acted with malicious purpose, in bad faith, or in a reckless manner. At this stage in the proceedings, the Court must determine whether the pleadings set forth facts that, if believed, would satisfy this final statutory exception to immunity.

For purposes of § 2744.03(A)(6), "malice" represents "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Woods v. Miamisburg City Sch.*, 254 F. Supp. 2d 868, 881 (S.D. Ohio 2003) (quoting *Jackson v. Butler City Bd of City Comm'rs*, 602 N.E.2d 363, 367 (Ohio Ct. App. 1991)); *see Pearl v. City of Wyoming*, No. C-120563, 2013 WL 3328858, at *2 (Ohio Ct. App. 2013) ("maliciousness" is defined as "'indulging or exercising malice; harboring ill-will or enmity'") (quoting *Teramano v. Teramano*, 216 N.E.2d 375, 377 (Ohio 1966)) (further citation omitted). "Bad faith" implies sinister motive that has "no reasonable justification." *Hicks v. Leffler*, 695 N.E.2d 777, 780 (Ohio Ct. App. 1997) (quoting *Zoppo v. Homstead Ins. Co*., 644 N.E.2d 397, 399-400 (Ohio 1994)).  It embraces more than bad

14

judgment or negligence. *Id*. (citation omitted). Rather, it suggests "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id*. "Wanton misconduct" is "the failure to exercise any care whatsoever." *Fabrey v. McDonald Vill. Police Dep't*, 639 N.E.2d 31, 35 (Ohio 1994) (citation omitted); *see Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1089-90 (S.D. Ohio 2013) ("Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result.") (citing *Anderson v. City of Massillon*, 983 N.E.2d 266, 267 (Ohio Ct. App. 2012)). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at 1090 (citing *Anderson*, 983 N.E.2d at 267). As a general rule, "issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury." *Anderson*, 951 N.E.2d at 1069 (quotation marks and citation omitted).

In her amended complaint, plaintiff alleges that "[t]he individual Defendants acted with malice, negligently, intentionally, recklessly, and with deliberate indifference to the rights and constitutional rights of the Plaintiff." (Am. Compl. ¶ 21.) To this conclusion, plaintiff adds the following facts: (1) Officers Garinger, McGowan, and others, "with force and violence and with reckless disregard for the rights of the Plaintiff, forcibly entered the Plaintiff's residence through a rear door causing damage to the door and to other personal property of the Plaintiff . . . (*id*. ¶ 8); (2) city officers allowed a third party access to the residence and to view plaintiff partially clothed (*id*. ¶¶ 9, 10); (3) city officers physically prevented plaintiff from stopping an unauthorized third

15

party from taking plaintiff's property (*id.* ¶¶ 11, 12); (4) city officers threated plaintiff with arrest or confinement for mental evaluation (*id.* ¶ 12); (5) the city officers entered plaintiff's residence without a warrant and without plaintiff's consent (*id.* ¶ 13); and (6) the city officers knew or should have known that the third party had no right of ownership in plaintiff's residence (*id.* ¶ 14).

At a minimum, these facts, if believed, would establish that the city officers acted recklessly with respect to plaintiff's right to be free from unlawful searches and seizures. By knowingly entering the premises without authorization, and by actively assisting another in absconding with plaintiff's property, it could be argued that the city officers consciously disregarded or were indifferent to plaintiff's rights. While it remains to be seen whether discovery will bear out any of these facts, the Court cannot find that, as a matter of law, the pleadings are devoid of allegations of recklessness. For this reason, the city officers are not entitled to immunity at this stage in the litigation.

### 2. *Civil Conspiracy Claims and the Intracorporate Conspiracy Doctrine*

Though it is not entirely clear from the amended complaint, plaintiff appears to assert civil conspiracy claims under both federal and Ohio law. In plaintiff's "Second Claim for Relief," she states simply that "Defendants have engaged in acts and conspired to engage in acts that violated rights secured to the Plaintiff by the Ohio Constitution." (Am. Compl. ¶ 24.) The Court construes this claim as a state law conspiracy claim. In plaintiff's "Sixth Claim for Relief," plaintiff alleges that Nettle, presumably as an employee of the CFDD, and the city officers:

> conspired and acted in malicious combination in the commission of the unlawful act of conducting an unlawful and unreasonable search and

16

> seizure of Plaintiff's house, property and person and the improper and unlawful subsequent actions to continue such activity by the condemnation of Plaintiff's property and the seizure and limitation of Plaintiff's person from occupying said property to the injury of the Plaintiff.

(Am. Compl. ¶ 31.) The Court generously construes this cause of action as raising a claim for federal civil conspiracy, though plaintiff fails to allege the statutory basis for such a claim.

Defendants argue that both claims are barred by the intra intracorporate conspiracy doctrine, which states: "[i]t is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) (applying intracorporate conspiracy doctrine to conspiracy claim under 42 U.S.C. § 1985) (quotation marks and citation omitted). Because Nettle and the officers are all agents and employees of the city, these defendants argue that plaintiff's civil conspiracy claims are barred.

As alluded to previously, it is not clear whether plaintiff has brought her federal conspiracy claim under § 1983 or § 1985 of Title 42 of the United States Code. It is well settled in the Sixth Circuit that, with respect to conspiracy claims under § 1985, a corporation cannot conspire with its own agents or employees, and that the intracorporate conspiracy doctrine, therefore, applies to § 1985 conspiracy claims. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (citing, among authorities, *Hull*, 926 F.2d at 510). It is less clear within the Sixth Circuit, however, as to whether the intracorporate conspiracy doctrine applies to conspiracy claims brought under § 1983.

17

This Court has previously observed that "Ohio district courts are split as to whether the intracorporate conspiracy doctrine applies to cases where . . . conspiracy is raised under 42 U.S.C. § 1983." *Briner v. City of Ontario*, Nos. 1:07CV129, 1:09CV1121, 2010 WL 3982755, at *14 (N.D. Ohio Oct. 7, 2010) (collecting cases). Indeed, it is evident from a survey of more recent cases that courts within the Sixth Circuit continue to spar over whether two individuals from the same entity can form a conspiracy under § 1983. *Compare Gillespie v. City of Battle Creek*, --F. Supp. 3d--, No. 1:13-CV-1320, 2015 WL 1459611, at *7 (S.D. Mich. Mar. 30, 2015) (applying intracorporate doctrine to bar conspiracy claim under § 1983); with *Tinney v. Richland Cnty.*, No. 1:14CV703, 2015 WL 542415, at *12 (N.D. Ohio Feb. 10, 2015) (refusing to extend intracorporate doctrine to § 1983 conspiracy claim brought against individual employees of the same municipality). Given the fact that the Court cannot determine on the pleadings whether plaintiff brought her federal conspiracy claim under § 1983 or § 1985, dismissal of the federal claim on the strength of the intracorporate conspiracy doctrine would be inappropriate.[6]

The disposition of plaintiff's state conspiracy claim is clearer. In *Bays v. Canty*, 330 F. App'x 594 (6th Cir. 2009), the Sixth Circuit acknowledged that the Ohio Supreme Court has yet to address whether the intracorporate conspiracy doctrine applies to civil conspiracy claims brought under Ohio law. However, noting that at least one lower state court had applied the doctrine to a state law civil conspiracy claim, the court

---

[6] In *Briner*, this Court observed that "courts have been reluctant to apply the [intracorporate conspiracy] doctrine to [§ 1983 conspiracy] claims that are not also brought against the corporate entity." *Briner*, 2010 WL 3982755, at *14 (citing *Kinkus v. Vill. of Yorkville*, 476 F. Supp. 2d 829, 840 (S.D. Ohio 2007)). The fact that plaintiff did not bring her federal conspiracy claim against the city, in addition to the city officers and Nettle, makes applying the doctrine in this instance even less advisable.

in *Bays* predicted that the Ohio Supreme Court would "embrace" the doctrine. *Id*. at 594-95 (citing *Scanlon v. Gordon F. Stofer & Bros., Co*., Nos. 55467, 55472, 1989 WL 69400, at *16 (Ohio Ct. App. June 22, 1989)). Inasmuch as all members of the alleged conspiracy were employed by the same municipality, the Court finds that plaintiff's state civil conspiracy claim is barred by the intracorporate conspiracy doctrine and is DISMISSED. Defendants' motion to dismiss plaintiff's federal civil conspiracy claim on the intracorporate conspiracy doctrine is DENIED.[7]

### 3. *Excessive Force*

Plaintiff's first cause of action, brought under 42 U.S.C. § 1983, appears to allege that defendants' actions violated several of plaintiff's constitutional rights, including the right to be free from the use of excessive force. (Am. Compl. ¶ 22.) Because plaintiff was a free person at the time the city officers gained entrance into her home, plaintiff's excessive force claim arises under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (The Fourth Amendment's "reasonableness" standard applies to "*all* claims that law enforcement

---

[7] Though not addressed in the briefing of city defendants' Rule 12(c) motion, the Court observes that plaintiffs' conspiracy claims appear to be entirely based upon conclusory allegations. Beyond identifying the perceived results of the conspiracy—an alleged unlawful search and seizure of plaintiff's personal property and a subsequent condemnation of her real property—plaintiff has arguably failed to allege any facts that support her conclusion that the city officers and Nettle were engaged in a conspiracy. Such conclusory allegations are insufficient under federal or state law. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (federal conspiracy claims must be pled with some specificity and may not rely on conclusory allegations); *Avery v. Rossford, Ohio Transp. Improvement Dist*., 762 N.E.2d 388, 395 (Ohio Ct. App. 2001) (Ohio civil conspiracy claim "must be plead with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim.") (citations omitted). However, defendants did not move for dismissal of the conspiracy claims on this ground, and plaintiff, therefore, did not have an opportunity to respond. If they elect, the Court will permit defendants to address this argument at the summary judgment stage.

officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen[.]") (emphasis in original); *see generally Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999); *Andrews v. Flaiz*, No. 1:14CV623, 2014 WL 4925044, at *10 (N.D. Ohio Sept. 30, 2014). The Sixth Circuit "has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right." *Terrance v. Northville Reg. Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (emphasis in original).

While plaintiff alleges that the "[t]he force used against the Plaintiff was excessive and unreasonable[,]" (Am. Compl. ¶ 20), the amended complaint is bereft of any allegations regarding the force that was actually used. The *only* allegation that could possibly be construed as a reference to force provides that Officer Garinger and other unidentified officers "physically prevented [plaintiff] from stopping [Tanya] from removing Plaintiff's personal property[.]" (*Id.* ¶ 12.) There are no facts that describe the type of force used or what actions *any* of the officers took against plaintiff that could constitute force. Indeed, the allegation of "physically prevent[ing]" does not necessarily suggest physical contact at all. Thus, plaintiff's conclusory allegation that the unspecified force that was used by unidentified officers was excessive is insufficient to set forth a cause of action under the Fourth Amendment. *See, e.g., Victor v. Gillette*, No. 1:14-CV-2731, 2015 WL 1728176, at *6 (N.D. Ohio Apr. 15, 2015) ("conclusory and vague allegations, devoid of further factual enhancement, are simply insufficient to give rise to

20

a plausible inference" that the officer used unreasonable force against plaintiff); *Andrews*, 2014 WL 4925044, at *11 (vague allegation that certain known and unknown officers used excessive force and "physically assaulted" plaintiff failed to state a claim for excessive force). Plaintiff's federal excessive force claim is DISMISSED.

4. *Negligent and Intentional Infliction of Emotional Distress*

Plaintiff alleges that defendants' actions constituted the negligent infliction of emotional distress. (Am. Compl. ¶ 28.) Under Ohio law, the tort of negligent infliction of emotional distress is only actionable in two instances, "namely when an individual was a bystander to a serious accident or was in fear of physical injury to herself." *Snyder v. United States*, 990 F. Supp. 2d 818, 833 (S.D. Ohio 2014) (citation omitted). Plaintiff was not a bystander to an accident, and she has not alleged that she was in fear of physical injury. *See Lisboa v. Tramer*, No. 97526, 2012 WL 1142920, at *3-4 (Ohio Ct. App. Apr. 5, 2012) (in malpractice action, plaintiff failed to set forth a claim for negligent infliction of emotional distress where he failed to allege that he was in fear for his own personal safety). For this reason, plaintiff's negligent infliction of emotional distress claim is DISMISSED.[8]

Additionally, for both negligent and intentional infliction of emotional distress, the alleged emotional distress must be serious, such that it constitutes "'emotional injury which is both severe and debilitating[,]'" and goes beyond "'mere

---

[8]Additionally, plaintiff complains that the city officers entered her home without permission, and without a warrant. (Am. Compl. ¶ 13.) The events described in the amended complaint, however, were incident to the performance of governmental police functions. The Court does not believe that this is the type of incident that would give rise to this limited tort. *Snyder*, 990 F. Supp. 2d at 833-34 (plaintiff's arrest, which involved being handcuffed, confined, and subjected to a body cavity search, did not give rise to a claim for negligent infliction of emotional distress).

upset or hurt feelings.'"[9] *Reeves v. Fox Television Network*, 983 F. Supp. 703, 711 (N.D. Ohio 1997) (quoting *Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983)); *see also Meyers v. Hot Bagels Factory, Inc*., 721 N.E.2d 1068, 1076 (Ohio Ct. App. 1999) (emotional injury element is the same for intentional and negligent infliction of emotional distress) (citing *Uebelacker v. Cincom Sys., Inc*., 549 N.E.2d 1210, 1220 (Ohio Ct. App. 1988)). Rather, such emotional distress "may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh*, 451 N.E.2d at 765.

Plaintiff's allegations that she has sustained an emotional injury that is both severe and debilitating are thin. While plaintiff has pled facts that demonstrate that she was angry and embarrassed by the city officers' conduct (*see* Am. Compl. ¶ 14), such allegations fail to establish a severe emotional injury. *See Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008) (allegation of embarrassment and harm to social standing insufficient to establish requisite injury for negligent infliction of emotional distress); *Reeves*, 983 F. Supp. at 711 (collecting cases providing that embarrassment or loss of reputation and self-esteem do not amount to serious emotional distress under Ohio law).

---

[9] Claims for intentional infliction of emotional distress also require proof that the actor knew or should have known that the actions taken would result in emotional distress, that the actor's conduct was so extreme and outrageous that it goes beyond all possible bounds of decency and is considered utterly intolerable in a civilized community, and that the actor's conduct proximately caused the emotional distress. *See Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio Ct. App. 1983) (quotation marks and citations omitted). For purposes of this Rule 12(b)(6) motion, the Court assumes that plaintiff has met these elements. *See, e.g., Hayward*, 759 F.3d at 619-20 (allegations of officers' forced entry into residents' home without a warrant or exigent circumstances sufficient to establish extreme or outrageous conduct).

Plaintiff also claims, however, that she has "experienced pain, suffering, mental anguish and serious emotional distress." (*See* Am. Compl. ¶ 29). Such conclusory allegations are often considered insufficient to state a claim. *See, e.g., Day v. Nat'l Elec. Contractors Ass'n*, --F. Supp. 3d--, Case No. 1:13CV547, 2014 WL 7723580, at *5 (S.D. Ohio Mar. 31, 2014) (allegation that plaintiff "suffered financial losses, resulting in mental anguish" insufficient to survive motion to distress); *Dooley v. Wells Fargo Bank, Nat'l Ass'n*, 941 F. Supp. 2d 862, 869 (N.D. Ohio 2013) (conclusory allegation that plaintiffs "have suffered emotional damages" insufficient to set forth severe emotional distress under Ohio law); *Ault v. Medina Med. Investors*, *LLC*, No. 1:06-cv-1113, 2007 WL 81853, at *6 (N.D. Ohio Jan. 8, 2007) (allegation that plaintiff "has suffered and continues to suffer severe emotional distress" insufficient to satisfy emotional distress element); *but see McFarland v. Breads of the World, LLC*, No. 09-cv-929, 2010 WL 1906391, at *2 (S.D. Ohio April 5, 2010) (allegation that plaintiff "has suffered and will continue to suffer humiliation, embarrassment, severe emotional distress, and loss of compensation" sufficient to withstand Rule 12(b)(6) dismissal), *report adopted by* 2010 WL 1905243. Nonetheless, given the fact that plaintiff is *pro se*, and other issues relating to the search remain for discovery, the Court will not dismiss plaintiff's intentional infliction of emotional distress claim at this time. The city officers remain free to move for summary judgment on this claim at the conclusion of discovery.

     5.    *Due Process*

     The Court makes one final observation regarding the amended complaint. A fair interpretation of plaintiff's first cause of action supports the conclusion that, in addition to raising Fourth Amendment claims, plaintiff is attempting to assert that the

search of her home by the city officers deprived her of due process under the Fourteenth Amendment. (Am. Compl. ¶ 22.) Substantive due process "guarantees 'protection of the individual against arbitrary action of government.'" *Jones v. Byrnes*, 585 F.3d 971, 976 (6th Cir. 2009) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). "'[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense. . . .'" *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 535 (6th Cir. 2008) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)) (further quotation marks and citation omitted). The United States Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (citation omitted). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Miller v. City of Columbus*, 920 F. Supp. 807, 818 (S.D. Ohio 1996) (citing *Albright v. Oliver*, 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)). In so limiting the scope, the Supreme Court has also held that substantive due process should not be relied upon to couch a constitutional claim when a specific constitutional provision protects the right allegedly infringed. *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997) (citing *Graham*, 490 U.S. at 394).

Here, plaintiff's allegation that she was subjected to an unlawful search and seizure is specifically covered by the Fourth Amendment. As such, it would seem appropriate that the allegation should be analyzed under the specific standard reserved for

Fourth Amendment claims, rather than under the general requirements of substantive due process. *See Boone v. Spurgess*, 385 F.3d 923, 933 (6th Cir. 2004) ("a specific constitutional guarantee—that all seizures be reasonable—trumps a more general guarantee—that all government action conform with substantive due process") (citation omitted). Nonetheless, defendants did not move for dismissal of this claim, and, without a motion and opportunity for plaintiff to respond, the Court will not *sua sponte* dismiss it. The Court will, however, permit the parties to address this issue at the summary judgment stage.

## V.  CONCLUSION

For all of the foregoing reasons, Summa defendants, the city, the CFPD, and the CFDD are DISMISSED from this action. For the same reasons, plaintiff's *Monell* claim is also DISMISSED. Additionally, plaintiff's claims for excessive force, state civil conspiracy, and negligent infliction of emotional distress are DISMISSED against the remaining defendants. This case shall go forward on the Fourth Amendment search and seizure claim against the city officers, the Fourteenth Amendment due process claim against the city officers, the federal conspiracy claim against the city officers and defendant Nettle, and the state law claims of trespass and intentional infliction of emotional distress against the city officers.

**IT IS SO ORDERED**.

Dated: June 22, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

25